## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ELI GOTTESDIENER**, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **08-CV-00618 (RCL)** |
| **v.** | : | |
| | : | |
| **INTERNAL REVENUE SERVICE,** | : | |
| | : | |
| **Defendant.** | : | |

**PLAINTIFF'S OPPOSITION TO IRS'S MOTION TO VACATE DEFAULT AND FOR
EXTENSION OF TIME TO RESPOND TO THE COMPLAINT,
AND STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT**

Plaintiff, *pro se*, respectfully opposes the motion of Defendant Internal Revenue Service

("IRS") to vacate the default entered by the Clerk on July 14, 2008 (Doc. 8) at the Court's

direction (Doc. 7, Order, July 8, 2008), and for an extension of time within which to respond to

the Complaint.

### Introduction

Defendant IRS's motion does not satisfy or even reference the standards for vacating the

default entered against it, despite the fact that those standards are discussed in Plaintiff's motion

for entry of default, *see* Doc. 5 at 3 ¶ 7.[1]

---

[1] Defendant's motion also fails to comply with Local Rule 7(m), despite the fact that Plaintiff's motion indicated Plaintiff was not necessarily opposed to consenting to either of the requests Defendant now makes, provided Defendant's default was satisfactorily explained. *Id.* As shown herein, Defendant's default has not been satisfactorily explained; therefore, there is, no reason for the Court to vacate it or for Plaintiff to consent to the relief Defendant seeks.

Under the Federal Rules, a court may set aside an entry of default only for "good cause shown." Fed.R.Civ.P. 55(c). The only good cause the IRS has asserted (albeit without identifying it as such) is that "the Court lacked personal jurisdiction over [it]" to enter the default. Def. Mtn. (Doc. 9) at 2. The reason for this, according to the IRS, is that Plaintiff "failed to serve the *Attorney General*" in accordance with Fed. R. Civ. P. 4(i). *Id.* (Defendant's emphasis).

However, the assertion is meritless. The parties agree that in a case against the United States such as this, Rule 4(i) requires service of the summons and complaint to be made upon each of the following: (1) the appropriate officer or agency of the United States when such person or entity is named as a defendant; (2) the U.S. Attorney for the district in which the action is brought; and (3) the Attorney General. Fed. R. Civ. P. 4(i). There is also no dispute that the Rule requires or permits service to be made upon all three federal entities/persons "by sending a copy of the summons and of the complaint by registered or certified mail addressed" to the entity/person in question. *Id.,* Rule 4(1)(A), (1)(B), (2). The IRS effectively concedes Plaintiff properly served both the IRS and the U.S. Attorney on April 17, 2008 (the same day the Amended Complaint ("Complaint") (Doc. 3)) was filed by sending a copy of the summons and of the complaint by certified mail to the IRS and the U.S. Attorney, as established in Plaintiff's proofs of service. *See* Docs. 4, 6 and attachments thereto (also showing the IRS and the U.S. Attorney acknowledged receipt of same, on April 21 and April 28, respectively). The IRS nevertheless suggests that Plaintiff was unaware of the requirement "to serve the *Attorney General*," Def. Mtn. at 2 (Defendant's emphasis), a suggestion it can only make by willfully ignoring the several distinct, sworn proofs that Plaintiff filed with the Court, establishing not

2

only that Plaintiff was aware of the requirement, but also that he fulfilled that requirement and thoroughly documented that he had done so.  Never once does the IRS acknowledge the existence of those sworn proofs – proofs which this Court necessarily found established a *prima facie* case of service in compliance with Rule 4(i), else the Court would not and could not have entered the Order which it did.

Indeed, the Court's Order of July 8 is effectively the law of the case that Plaintiff has established a *prima facie* case of service in compliance with Rule 4(i), and, in any event, in the face of such proof, courts uniformly require a defendant challenging proper service to come forward with clear and convincing proof that service was improper before they will seriously entertain any such claim.  Here, however, the government offers the Court nothing more than an unsworn assertion (made without evidence of personal knowledge on the part of the maker) that the Tax Division did not <u>receive</u> a summons and complaint as it typically does when the Attorney General has been properly served, *see* Def. Mtn. at 2, an alleged fact which, even if true, is strictly irrelevant here where receipt by the Tax Division is simply not a condition precedent to proper service on the Attorney General which has otherwise been shown to have been made.  Service under Rule 4(i) is complete upon the Attorney General when a copy of the summons and complaint is <u>sent</u> via certified or registered mail to the Attorney General, as the unrebutted evidence in this case establishes it was.  Fed. R. Civ. P. 4(i)(1)(B).  Congress could have easily made service dependent upon <u>receipt</u> by the Attorney General of process sent to or upon receipt by a specific office under his aegis (for example, the Tax Division) but chose not to

do so.[2]  Congress decided, instead, that requiring a plaintiff to **send** process by certified or registered mail to <u>three</u> different federal agencies provided more than adequate assurance that the relevant officials would be notified of the suit, as this case well illustrates.

It is of critical importance to the proper exercise of the Court's considerable discretion in this matter for it to recognize that, as noted, the IRS effectively admits that both the IRS and the U.S. Attorney have had <u>actual knowledge</u> of the pendency of this suit since the latter half of April, shortly after it was filed.  *See also* Docs. 4, 6 and attachments.  Although the Tax Division claims not to have received the summons and complaint, it too had actual knowledge of this suit no later than June 17 (as discussed below), long before the time had expired for Defendant to file an opposition to Plaintiff's motion (filed on June 11).  The Tax Division (and the IRS) nevertheless failed to oppose Plaintiff's motion or move for an extension of time to respond to it within the time set by the Local Rules.  Moreover, between the time for opposing the motion had formally expired (late June) and July 23, the Tax Division and the IRS also failed to act, despite seeing that Plaintiff filed additional proofs of service on July 2, despite the Court's Order on July 8, and despite the Clerk's entry of default on July 14.

---

[2] *Cf. Winters v. U.S. Postal Service,* 721 F. Supp. 1388, 1392-93 (D.D.C. 1989) (for purposes of Federal Tort Claims Act, mailing of summons and complaint to Attorney General was sufficient notice to the United States within the six-month period for filing complaint and thus permitted plaintiff's amended complaint to relate back to date of filing complaint against Postal Service, even though Attorney General did not receive the summons and complaint until after the expiration of the six-month period, and service on the U.S. Attorney was not made until after expiration of six-month period; "Rule 15(c)'s choice of the words 'mailing to' rather than 'receipt by,' does not appear to be accidental or unintentional and this Court reads those words to mean what they say. . . . Although the Attorney General may not have *physically received* a copy of the complaint and summons until after the statutory period, plaintiff *mailed* these documents *to* the Attorney General on February 15, 1989, within the six-month statutory period") (emphasis in the original).

Defendant's motion presents no facts supporting an alternative, "excusable neglect"-type basis for vacating the default. That the Court should decide Defendant's motion solely on the basis upon which it was presented – *i.e.,* that the default must be vacated because the Court lacked jurisdiction to enter the default based on allegedly defective service on the Attorney General – is confirmed by the IRS's failure to allege, let alone demonstrate, that it has a meritorious defense to Plaintiff's claim, a *sine qua non* of any motion to vacate a default or a default judgment. *See* Local Rule 7(g) ("A motion to vacate an entry of default, or a judgment by default, or both, <u>shall be accompanied by a verified answer presenting a defense sufficient to bar the claim in whole or in part</u>") (emphasis added). The question whether Plaintiff is entitled to a default judgment against the United States under Fed. R. Civ. P. 55(e) ("a default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court"), is a question for another day.

### Factual Background

1.      This is an action under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA"), as amended, to secure access to IRS records Plaintiff requested in January 2007. The original complaint was filed on April 9. *See* Doc. 1. An amended complaint ("Complaint") was filed on April 17. *See* Doc. 3.

2.      Plaintiff is an attorney in private practice whose firm prosecutes class action lawsuits brought under the Employee Retirement Income Security Act ("ERISA"), as amended, on behalf of participants in ERISA-governed defined benefit pension plans. Compl. ¶ 4. Some of the suits Plaintiff's firm brings involve claims on behalf of participants who question the

legality under ERISA of the methodology used to calculate lump sum distributions of their pensions. *Id.*

3.    What is or is not lawful under ERISA is often decided based on what is or is not lawful under the Internal Revenue Code ("IRC" or "Code"). Many provisions of ERISA, including those governing the calculation of lump sum distributions from defined benefit plans, are paralleled in the Code, and since 1978, ERISA has provided that regulations promulgated under the Code by the Department of the Treasury, including those involving the calculation of lump sums, are equally applicable to the parallel provisions of ERISA. *See* ERISA § 3002(c), 29 U.S.C. § 1202(c); *see also* 29 C.F.R. § 2530.200a-2.

4.    Defendant IRS is a component of the Treasury Department and is responsible for the enforcement of the Code provisions and the Treasury regulations applicable to ERISA-governed pension plans. It is also an agency of the United States government within the meaning of 5 U.S.C. § 552(f), and subject to the requirements of the FOIA.

5.    In authoritative interpretive guidance issued in 1996, the IRS established the methodology that certain defined benefit pension plans, known as "cash balance" pension plans, must follow in calculating lump sums. *See* IRS Notice 96-8, 1996-1 C.B. 359, 1996 WL 17901 (Feb. 5, 1996).

6.    On September 15, 1999, the IRS announced a suspension of the processing of determination letter applications by employers seeking to convert their existing, traditional defined benefit plans to cash balance defined benefit plans. *See* IR-2006-193, 2006 WL 3762099 (I.R.S.) (Dec. 21, 2006).

7.     On August 17, 2006, the President signed the Pension Protection Act of 2006, P.L. 109-280 ("PPA"), which, among other things, amended ERISA and the Code to provide that a cash balance pension plan that satisfies certain vesting and other standards may pay lump sums in an amount calculated in a different fashion for distributions after August 17, 2006.  Consistent with the prospective-only nature of the PPA, in December 2006, the IRS confirmed that it would continue to apply the strictures of Notice 96-8 to its review of cash balance plan applications for a "determination letter," *i.e.,* an opinion by the IRS that a plan is tax-qualified (*see* 26 C.F.R. § 601.201), for all periods preceding the PPA's effective date for which a determination letter is sought.  *See* IRS Notice 2007-6, 2006 WL 3743114 (issued January 16, 2007).  Based on the passage of the PPA, the IRS said it was lifting the moratorium it had imposed and intended to swiftly process the backlog, some 1,250 applications, with the goal of completing the processing of 90% of them by the end of fiscal year 2007.  *See* IR-2006-193, 2006 WL 3762099 (I.R.S.) (Dec. 21, 2006).

8.     On January 18, 2007, two days after Notice 2007-6 was issued, Plaintiff sent the IRS a FOIA request asking for the "plan document" for all cash balance plans with then-pending determination letter applications that the IRS had identified, or would in the review process identify, as not satisfying the requirements of Notice 96-8 as to pre-August 18, 2006 distributions.  (The plan document is a statutorily-required document under ERISA and one of the most elemental parts of a plan sponsor's submission made in support of its request for a determination letter).

9.     As Plaintiff would later explain to IRS officials involved in responding to his request, Plaintiff made his request as promptly as he did to ensure it could be fulfilled in a

prompt and efficient manner from the standpoint of everyone concerned and so that compliance with the request would have involved little more than an email to the relatively small number of agents in the field assigned to process pending determination letter applications, notifying them of Plaintiff's FOIA and directing them to forward a copy of the plan document to the FOIA office for review and release to Plaintiff in the case of any plan found to have a Notice 96-8 problem.  Furthermore, Plaintiff made his request as promptly as he did because, in defense of lawsuits filed challenging the sufficiency of lump sum payments made in violation of Notice 96-8's requirements, plan sponsors routinely argue such claims are barred by the statute of limitations and that a participant's cause of action accrues on the date he or she receives the allegedly insufficient lump sum, an argument which many courts (wrongly, Plaintiff submits) endorse.  *See, e.g., Flagg v. Skadden, Arps, Slate, Meagher & Flom Pension Plan,* No. 07 Civ. 7392 (PKC), 2008 WL 2471717 (S.D.N.Y. June 18, 2008).

10.    Although no one with whom Plaintiff has been in contact since January 2007 about his request has ever directly or indirectly suggested that Plaintiff is seeking disclosure of documents or information that can be withheld from him under the FOIA,[3] not a thing has been done to begin processing Plaintiff's request.  Compl. ¶¶ 14-54.  Defendant has assigned at least three different supervisors to Plaintiff's request, two of whom were "rotated" and relieved of any further responsibility for the handling of Plaintiff's request, the third of whom stopped communicating with Plaintiff and his assistant after initially apologizing for the way the case has

---

[3] The plan document and documents sent by the IRS to the plan sponsor notifying the sponsor that its application cannot be processed until the plan is brought into compliance with Notice 96-8 are documents that, by statute, must be made available upon written request to members of the public.  *See* 26 U.S.C. § 6104(a); Treas. Reg. § 301.6104(a)–1 through § 301.6104(a)–3.

been handled and promising prompt action. *Id.* The request has been so thoroughly mishandled that in May 2008, the IRS wrote Plaintiff informing him that it was unilaterally "*closing your FOIA request*" on the spurious ground that another branch of the IRS has "primary jurisdiction" over the records Plaintiff requested. *See* Ex. 1, Mtn. for Entry of Default (Doc. 5), filed June 11, 2008.

11.     Following the initiation of this action in April 2008, Plaintiff initiated a second action against the IRS in May 2008 (*"Gottesdiener II"*) involving the IRS's failure to make timely and complete responses to Plaintiff's requests for documents concerning some 22 specifically identified plans which Plaintiff has learned have or potentially have Notice 96-8 issues. *See* Complaint, Doc. 1, *Gottesdiener v. IRS,* 08-cv-799 (RJL).[4]

12.     Of particular relevance, again, is the fact that there is no contention by the government that Plaintiff does not have a right to the documents in question. In fact, the IRS has

---

[4] *Gottesdiener II* was forwarded to the Clerk's office on May 7, 2008 under cover of a letter designating it as related to this action, *see* Declaration of Candis A. Conover, attached hereto as Ex. A, ¶ 5 and Ex. 1 thereto; the copies of the complaints forwarded to the Clerk and served on Defendant, the U.S. Attorney and the Attorney General all bear the Plaintiff-created upper-right hand caption, "08-CV-__ (RCL)" (albeit that it is not visible on the original filed on the ECF because there is a Clerk-generated label showing case no., assignment, assignment date and type of case covering Plaintiff's caption), *see* Conover Decl. ¶ 6 and Ex. 2; and the complaint itself states "Plaintiff incorporates by reference the allegations contained in the related action, *Gottesdiener v. IRS,* 08-618 (RCL) (D.D.C., filed Apr. 9, 2008) ("*Gottesdiener I*"), *see* Doc. 1, Compl. ¶ 6, *Gottesdiener II* (emphasis added). Nevertheless, contrary to what is stated in Plaintiff's May 7 letter to the Clerk, *see* Conover Decl., Ex. 1 ("Please note, as stated on the Civil Cover sheet, that this action is related *to Gottesdiener v. IRS*, 08-CV-618 (RCL)") (emphasis added), Plaintiff inadvertently failed to answer "yes" on the civil cover sheet in response to the question whether that action is related to another pending action. *See* Declaration of Eli Gottesdiener, attached hereto as Ex. B, ¶ 2. Plaintiff delayed making service on the IRS in this second action because, as noted in the text (¶ 12), the IRS has been far more responsive in that case than in this one and there were indications following the filing of suit that it might respond fully and promptly to Plaintiff's requests without the need for an enforcement action. *Id.* ¶ 3. Because it again appears that full compliance cannot be obtained in a timely manner on a voluntary basis, Plaintiff will be proceeding with the second action and, once the government's consent is obtain, will move Judge Leon to have *Gottesdiener II* transferred to this Court's docket as a related action.

disclosed to Plaintiff some of what he has requested concerning those specifically identified plans and has indicated further documents are forthcoming. The issue in that case (unlike this one) is related to the completeness and timeliness of the IRS's response. *See Gottesdiener II* Compl. ¶ 22.[5]

## Argument

### I.      The Motion to Vacate the Default Should Be Denied.

Defaulting in response to a complaint is a serious matter. Requesting entry of a default against a non-responsive defendant, especially against a federal agency, is also a serious matter. For that reason, Plaintiff waited for nearly a month before moving for entry of default (*see* Doc. 5, filed June 11, 2008), and then brought the issue to the attention of the Court, instead of the Clerk who would have had no discretion in the matter.

Also recognizing the seriousness of the matter, the Court, through its law clerk, inquired of Plaintiff after the time for Defendant to respond to the motion had expired as to whether Plaintiff possessed additional proofs of service beyond the original Conover Declaration and the items of proof it details but did not append. *See* Doc. 4. Plaintiff did and so responded by filing a declaration of his own on July 2 (*see* Doc. 6), further explaining and appending the items referenced in Ms. Conover's declaration as well as several other items of proof establishing that Plaintiff had properly served the IRS, the U.S. Attorney and the Attorney General. *See* Doc. 6,

---

[5] On July 23, the same day of Defendant's filing in this action, Defendant filed a motion in the second action seeking an extension of time within which to respond to the Complaint, also asserting Plaintiff failed to serve the Attorney General. *See* Doc. 3, *Gottesdiener II.* Judge Leon granted the motion two days later. *See* Doc. Entry for July 25, minute order, *Gottesdiener II.*

Exs 1-2.  Only then did the Court act (on July 8), ordering the Clerk to enter a default in this action, *see* Doc. 7, which the Clerk did on July 14, *see* Doc. 8.

The only party to this action that seems not to be addressing the government's default with the seriousness it deserves is the government.  It is not serious to tell the Court it had no jurisdiction to enter an order that it obviously did not enter lightly without even acknowledging the existence of the two sworn declarations and multiple other sworn proofs which the Court necessarily found established a *prima facie* case of proper service and that the Court did have jurisdiction to enter the order it did.  It is not serious to suggest that the Plaintiff did not recognize he was required to serve the Attorney General, *see* Def. Mtn. at 2, when it is obvious from those sworn proofs that Plaintiff not only recognized that requirement but fulfilled it.  It is also not serious to seek to deflect attention away from the question of default by suggesting that Plaintiff has been less than forthright in this matter when the government knows these suggestions have no foundation.[6]

### A.  Plaintiff properly served the Attorney General in accordance with Rule 4(i).

There can be no serious argument that Plaintiff failed to serve the Attorney General in this case.  In her declaration of May 4, 2008, Plaintiff's assistant, Ms. Conover, stated under penalty of perjury, among other things:  "On April 17, 2008, I caused the Attorney General of the

---

[6] *See supra* Part C (discussing government's suggestions that Plaintiff intentionally failed to designate *Gottesdiener II* as related to *Gottesdiener I* when it possesses evidence showing Plaintiff did intend to so designate *Gottesdiener II*, and government's suggestion that Plaintiff intentionally failed to return a phone call government counsel placed to Plaintiff's office when the government knows the call was merely to inform Plaintiff that the Tax Division had assigned a lawyer to his cases and pointedly did not ask Plaintiff's assistant to have Plaintiff return the call, as established in her attached declaration).

United States to be served with the summons and complaint by sending same via certified mail to him at United States Department of Justice, Washington, D.C. 20530, return receipt requested. The Attorney General acknowledged service on April 23, 2008 as evidenced by the receipt card from the U.S. Postal Service for item No. 7006-2150-0001-8247-7875." Doc. 4 ¶ 4. *See Erwin v. U.S.*, Civ. No. 05-1698 (CKK), 2006 WL 2660296, *5 (D.D.C. Sept. 15, 2006) (such proof would have been sufficient proof of service on the Attorney General and the U.S. Attorney but for the fact that it was effected by one of the plaintiffs, which is not allowed).

On July 2, 2008, Plaintiff submitted his own declaration further attesting that Ms. Conover, on Plaintiff's behalf, effected proper service on the Attorney General as well as the IRS and the U.S. Attorney. Doc. 6 at 1-2. Attached to Plaintiff's declaration was Exhibit 1, which Plaintiff states under penalty of perjury consists of scans of the original Domestic Return Receipts (front and back) received back from the Attorney General *signed by an agent of the Attorney General*. Plaintiff also attached Exhibit 2, which further confirms proper service and actual receipt by the Attorney General: Exhibit 2 includes a screenshot of the applicable pages of the United States Postal Service website, by which Plaintiff's office tracked delivery, specifically showing the identical item referenced in the Domestic Return Receipt as having been delivered to the Attorney General.

As noted above, Defendant has chosen to argue the Attorney General was not properly served yet acts as if these proofs of service do not exist despite the fact they were sufficient in the Court's view to warrant an order directing the Clerk to enter a default against the government. Defendant's disrespect for the Court's Order aside, the fact is that the courts uniformly hold evidence of valid service less comprehensive than Plaintiff's to shift the burden

12

to the defendant to show strong and convincing evidence of improper service and to explain with specificity how the plaintiff allegedly failed to satisfy the requirements of Rule 4. *See, e.g., O'Brien v. R.J. O'Brien & Associates, Inc.,* 998 F.2d 1394, 1398-1400 (7th Cir. 1993); *Photolab Corp. v. Simplex Speciality Co.,* 806 F.2d 807, 810 (8th Cir. 1986). Obviously, Defendant does not even come close to satisfying its burden. Its unsworn assertion about what the Tax Division did not receive from whomever signed for the summons and complaint on the Attorney General's behalf is utterly beside the point in the face of Plaintiff's multiple sworn proofs of service made in conformance with Rule 4(i). *Compare Kidd v. I.R.S,* No. 03-1973 HHK/DAR, 2006 WL 1390422, *3 (D.D.C. Mar. 10, 2006) (granting IRS's motion to dismiss for failure to effect proper service on the Attorney General; in support of defense motion, government submitted an affidavit attesting to the fact that "the Mail Referral Service of the Department of Justice" received a copy of the complaint via registered mail but not the summons; plaintiff produced no evidence that she also sent the summons via registered mail).

Indeed, the government evidently does not even believe the argument it asks the Court to accept. If it did, it would have done what it routinely does in cases where there is, in fact, a basis for challenging service – *i.e.,* it would have moved to <u>dismiss</u> the Complaint under Fed. R. Civ. P. 12(b)(5), because far more than 120 days has expired since Plaintiff filed suit, *see* Fed. R. Civ. P. 4(m), and would not have merely asked for more time to respond to it. *Compare Erwin, supra,* 2006 WL 2660296, *1 (IRS moves to vacate default entered against it and cross-moves for dismissal of the complaint based on, among other things, plaintiff's failure to effect proper service of process); *Bennett v. United States,* 462 F.Supp.2d 35, 36 (D.D.C. 2006) (same);

13

*Pragovich v. U.S.,* Civ. No. 05-2222 (JR), 2007 WL 521890, *1 n.3 (D.D.C. Feb. 14, 2007) (same, except no default yet entered so IRS argument is in opposition to motion to enter default as well as in a cross-motion to dismiss for improper service).[7]

Clearly, the argument that the Court lacked jurisdiction over the IRS to enter the order it did should be rejected.

**B.    Defendant has not asserted or established that it has a meritorious defense to Plaintiff's claim.**

There is nothing in the record indicating that Defendant has a meritorious defense to this action, a factor which should weigh heavily against granting the Defendant the relief it seeks. *See, e.g., Sir Charles Cox 2X v. District of Columbia,* Civ. A. No. 90-1691-LFO, 1990 WL 209840, *4 (D.D.C. Dec. 4, 1990) (District of Columbia's failure to provide evidence of a meritorious defense weighed heavily in favor of decision to deny its motion to vacate default entered against it in 42 U.S.C. § 1983 action and to grant plaintiff's motion for a default judgment). As noted, Local Rule 7(g) requires that "[a] motion to vacate an entry of default, or a judgment by default, or both, <u>shall be accompanied by a verified answer presenting a defense sufficient to bar the claim in whole or in part</u>," Local Rule 7(g) (emphasis added), which requirement Defendant clearly has not fulfilled and indicates it will not even be in a position to possibly fulfill until August 15.

---

[7] *See also Guidetti v. U.S.,* Civ. No. 06-0476 (JR), 2007 WL 521891, *1 (D.D.C. Feb. 14, 2007) (IRS moving to dismiss based on improper service, among other grounds); *Placke v. U.S.,* Civ. No. 06-0026 (JR), 2007 WL 537724, *1 (D.D.C. Feb. 16, 2007) (same); *Lykens v. U.S. Government,* Civ. No. 06-1226, 2006 WL 3408188, *4 n.2 (D.D.C. Nov. 27, 2006) (same); *Lindsey v. United States*, 448 F.Supp.2d 37, 45-47 (D.D.C. 2006) (same); *Heath v. U.S.*, Civ. No. 05-2331 (RMU), 2006 WL 2473616, *1 (D.D.C. Aug. 24, 2006) (same).

Indeed, as noted above, the documents Plaintiff seeks both in this case and *Gottesdiener II* are documents that, by statute, must be made available upon written request to members of the public. *See* 26 U.S.C. § 6104(a); Treas. Reg. § 301.6104(a)–1 through § 301.6104(a)–3. No one at IRS has ever told Plaintiff that he is not entitled to the documents he seeks here and even in *Gottesdiener II* the one IRS employee who briefly believed some of what Plaintiff requests in that case need not be made public explicitly withdrew that contention upon researching the matter and has since fully agreed with Plaintiff on that score. *See* Gottesdiener Decl. ¶ 4; *Gottesdiener II* Compl. ¶ 20. Under the circumstances, where Defendant has not even <u>alleged</u>, let alone demonstrated, it has a meritorious defense, there is no sufficient basis for granting Defendant the relief it seeks.

**C.     Defendant advances no claim or facts supporting a claim of excusable neglect. To the contrary, the facts establish willful delay.**

This case is also a poor candidate for relieving Defendant of its default where Defendant itself advances no claim of excusable neglect and such "facts" as it adduces regarding its failure to defend or enter an appearance in this action prior to July 23 do not support such a claim.

Defendant asserts, without supporting declarations, that "[i]n late June, 2008, immediately upon learning" of this suit, Tax Division lawyer Michael Salem "made a telephone inquiry to Mr. Gottesdiener to discuss the plaintiff's failure to properly serve the United States as required by Fed.R.Civ.P.4, and to designate civil action no. 1-08-cv-799 as a result case under LCvR 40.5. *As of this date, Mr. Gottesdiener has not returned Mr. Salem's telephone call.*" Def. Mtn. at 3 (Defendant's emphasis).

There are numerous problems with these assertions – and implied assertions.

15

*First,* the government does not disclose when and how the Tax Division (as opposed to Mr. Salem) came to learn of the pendency of this matter. The government does not even date the "telephone inquiry" to Plaintiff with more precision than "late June." Because the government also fails to define what it means by "immediately," the Court is left to wonder just when the Tax Division claims to have learned of this action, and how. The exact date could be important. For example, if the Court found that the Tax Division had actual knowledge of this action while there was still time to file an opposition or a request for more time to file an opposition to Plaintiff's June 11 motion for entry of default, but failed to do so, it might conclude, along with the consideration of other facts, this is not a case in which the government's default should be excused.

*Second,* assuming the date Mr. Salem had actual knowledge of this action is determined to be the relevant date for purposes of an excusable neglect argument and that "date" is "late June," the government fails to explain why it took the Tax Division between "late June" and July 23 to make an appearance in the case with Plaintiff's motion for a default pending and later acted upon by the Court and then the Clerk – and in particular, why the government failed to act on its claim of defective service after July 2, when it saw Plaintiff filing substantial additional proofs of service on the Attorney General which it claims never happened.

*Third,* the government also does not explain why it cannot date a "telephone inquiry" that it obviously believes important enough to share with the Court with more accuracy than "late June." If the government knows the date but did not disclose it, that raises one set of questions. If the government does not know the date of the call, that raises another.

In fact, as the attached declaration of Plaintiff's assistant Ms. Conover establishes, the

16

"telephone inquiry" the government claims Mr. Salem made in "late June" was in fact not any

kind of "inquiry" at all, nor was it made in "late June."[8]  It was instead merely a courtesy call,

made at noon on June 17 (well within the period of time the government had to oppose the

motion for entry of default), by Mr. Salem who identified himself as "Assistant Chief of

Assignments" and who said he was simply calling to inform Plaintiff that "his cases" had been

assigned to attorney Martineau and that the government planned on defending them.  Conover

Decl. ¶ 2.  Mr. Salem said nothing at all about the government having or wanting to express any

concern to Plaintiff that he had failed to properly serve the Attorney General or had failed to

designate the second action filed against the IRS as a related action.  *Id.* ¶ 4.  Also directly

contrary to the impression the government tries to leave with the Court, Mr. Salem did not

request or imply that Mr. Gottesdiener should return Mr. Salem's call or that Mr. Gottesdiener

call Mr. Martineau.  *Id.*   *Compare* Def. Mtn. at 3 ("*As of this date, Mr. Gottesdiener has not*

*returned Mr. Salem's telephone call*"") (Defendant's emphasis).  According to Ms. Conover's

sworn statement, Mr. Salem was about to hang up the phone without even leaving Mr.

Martineau's or his (Mr. Salem's) phone number if she had not asked for them.  Conover Decl. ¶

3.

       Far from establishing a basis for excusable neglect, the facts suggest willful delay of the

kind the Court in *Sir Charles Cox 2X, supra,* found weighed heavily in favor of denial of the

government's motion to vacate the default and in favor of a grant of the plaintiff's motion for a

---

[8] Ms. Conover's sworn statements are corroborated by contemporaneous emails she sent Plaintiff
regarding the call which contain information which Plaintiff considers privileged, confidential or
otherwise not appropriate for disclosure in court or to the government.  However, Plaintiff will produce
these emails to the Court for an *in camera* review and disclosure to the government if the Court believes
necessary or appropriate.

default judgment.[9]  *See Sir Charles Cox 2X,* 1990 WL 209840, *3-4 ("The District did not just

miss the deadline: Default was entered over a month after the time to respond had expired.

Moreover, the District effectively had two opportunities to respond to the complaint because

plaintiff filed a notice on September 10 that defendant had not filed an answer or otherwise

responded to the complaint. Nevertheless, defendant still failed to file anything for more than

twenty days"; also noting the District had failed to satisfactorily explained its inaction).  The

facts here also establish willfulness.  Here too the government has provided no explanation for its

failure to timely respond to the Complaint or the motion for entry of default, has failed to explain

why it did not respond sooner than it did, and has no explanation for why it could not have by

now answered the Complaint, as it was required to do as a condition precedent for filing this

motion as required by Local Rule 7(g).[10]

---

[9] Plaintiff notes that this is not a case in which the Court is currently being asked to enter a default judgment nor is it the typical case involving a private party:  Plaintiff would only be entitled to a default judgment if he can convince the Court he is actually entitled to the relief he seeks.  *See* Fed. R. Civ. P. 55(e).  Plaintiff submits this should alter the Court's calculus considerably such that while cases like *Sir Charles Cox 2X* are relevant, Defendant's motion can and should be denied based on far less of a showing than was made in that case.

[10] These failings are obviously aggravated by the government's suggestion, *see* Def. Mtn. at 3, that Plaintiff intentionally failed to designate *Gottesdiener II* as related to *Gottesdiener I* on the civil cover sheet when the government knows from the face of the Complaint in *Gottesdiener II* that this was inadvertent, and the suggestion that Plaintiff intentionally failed to return a phone call government counsel placed to Plaintiff's office when the government knows the call was merely to inform Plaintiff that the Tax Division had assigned a lawyer to his cases and pointedly did not ask Plaintiff's assistant to have Plaintiff return the call, as established in her attached declaration.

**D.      Granting Defendant's motion would prejudice Plaintiff.**

A final reason for denying Defendant's motion is the prejudice it would or could cause Plaintiff and the plan participants he seeks to represent, who are constantly met with defense contentions that their claims are in whole or in part barred by limitations.

The unrebutted allegations show that Plaintiff acted as expeditiously as possible to get his FOIA request on file at a time when compliance with it would have caused the IRS the least disruption possible and that Plaintiff did not precipitously file suit but instead patiently attempted to explain and re-explain his request in an effort to have it fulfilled without the need to resort to litigation.  Well over a year later, when it was clear that he had no option other than to file suit, he promptly effected service.  Instead of progress, he has since then seen the IRS FOIA office actually close his request notwithstanding the pendency of this case on the spurious grounds that a component of the IRS not exempt from the FOIA has primary jurisdiction over the records Plaintiff has requested.  The IRS was required to respond by May 21.  It has delayed matters both in and out of court without justification and without any indication that it has any defense to Plaintiff's claim.  Meanwhile the statute of limitations clock continues to tick and Plaintiff is no further along than he was in January 2007.  The government and the public are protected against an improvident grant of a default judgment by the strictures of Rule 55(e).  Plaintiff respectfully submits it is time to move on and give Plaintiff the opportunity to prove to the Court's satisfaction that his claim has merit and he should be granted the relief he seeks.

## Conclusion

Wherefore, for the reasons stated herein and for such reasons as may appear to the Court, Plaintiff respectfully submits the instant motion be denied.

19

Respectfully submitted


 /s/ *Eli Gottesdiener*
Eli Gottesdiener (D.C. Bar No. 420764)
GOTTESDIENER LAW FIRM, PLLC
1025 Connecticut Avenue, N.W., Suite 1000
Washington, D.C. 20036
Email:  eli@gottesdienerlaw.com
Telephone:  (202) 243-1000
Facsimile:   (202) 243-1001

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELI GOTTESDIENER**, | : |
| | : |
| **Plaintiff,** | : |
| | : **08-CV-00618 (RCL)** |
| **v.** | : |
| | : |
| **INTERNAL REVENUE SERVICE,** | : |
| | : |
| **Defendant.** | : |
| | : |

### DECLARATION OF CANDIS CONOVER

I, Candis Conover, declare under penalty of perjury pursuant to 18 U.S.C. § 1746:

1.  I am Mr. Gottesdiener's assistant and senior litigation paralegal with Gottesdiener Law Firm, PLLC.

2.  On June 17, 2008, just before noon, a Mr. Salem called the office and asked to speak with Mr. Gottesdiener.  I informed Mr. Salem (whose name I did not have from him at that moment) that Mr. Gottesdiener was unavailable and asked if I could take a message.  Mr. Salem then identified himself as Mike or Michael Salem, "Assistant Chief of Assignments," and told me that he was just calling to let Mr. Gottesdiener know that "his cases" had been assigned to "Mike Martineau." I asked if there was anything else, and he replied that I could tell Mr. Gottesdiener that they planned on defending the cases.

3.  As it seemed he was about to hang up, I asked him for his and Mr. Martineau's phone numbers, he gave them to me, and that concluded the call.

4.  Mr. Salem definitely said nothing at all about the government having and wanting to express any concern to Mr. Gottesdiener that he had failed to properly serve the Attorney

General or that he had failed to designate the second action filed against the IRS as a related action.  Mr. Salem definitely did not request or imply that Mr. Gottesdiener return Mr. Salem's call or that Mr. Gottesdiener call Mr. Martineau, something which I took note of and specifically conveyed to Mr. Gottesdiener.  The tone and content of his call indicated to me that it was merely a courtesy call.

5.  Exhibit 1 attached hereto is a true and accurate copy of a letter I drafted and Plaintiff edited, reviewed and signed and authorized me to send and which I did send to the Clerk's Office on May 7, 2008 in connection with the filing of a second action Plaintiff filed against the IRS (referred to here and elsewhere as "*Gottesdiener II*").

6.  The copies of the complaints forwarded to the Clerk in connection with *Gottesdiener II* and served on Defendant, the U.S. Attorney and the Attorney General all bear the Plaintiff-created upper-right hand caption, "08-CV-__ (RCL)" albeit that it is not visible on the original filed on the ECF because there is a Clerk-generated label showing case no., assignment, assignment date and type of case covering Plaintiff's caption.  Exhibit 2 attached hereto is a true and correct copy of the first page of the complaints I sent to the Clerk's Office on May 7, 2008 and which were returned to our offices for serving on Defendant, the U.S. Attorney and the Attorney General and which were so served later in the month.  .

I, Candis Conover, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the foregoing is true and correct.

*/s Candis Conover*
Candis Conover

2

Exhibit 1



**Gottesdiener**
**Law Firm, PLLC**

New York | Washington, D.C.
www.gottesdienerlaw.com

498 7th Street
Brooklyn, NY 11215
Tel: 718.788.1500
Fax: 718.788.1650

**Eli Gottesdiener**
eli@gottesdienerlaw.com

May 7, 2008

<u>Via overnight mail</u>

Clerk's Office
United States District Court
for the District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20001
(202) 354-3050

    Re:  New Civil Action – *Gottesdiener v. IRS,* 08-__

Dear Sir or Madam:

    Enclosed for filing please find:

1.     The original and one (1) copy of the complaint in the above-entitled new action;
2.     A check made out to the "Clerk," in the amount of $350.00;
3.     The Civil Cover sheet (original);
4.     Summons and Complaints for (1) the defendant IRS; (2) the Attorney General of the United States; (3) the United States Attorney for the District of Columbia;
5.     A computer disk with a PDF of the complaint for the ECF system.

    Also enclosed are a self-addressed envelope and an extra copy of the complaint for file stamping and return to us along with the embossed, ready-to-serve Summons and Complaints.

    Please note, as stated on the Civil Cover sheet, that this action is related to *Gottesdiener v. IRS,* 08-CV-618 (RCL).

            Sincerely,

            /s

            Eli Gottesdiener

Enclosures

Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **ELI GOTTESDIENER**, | : | |
| | : | |
| **498 7th Street** | : | |
| **Brooklyn, NY  11215** | : | |
| **Plaintiff,** | : | |
| | : | **08-CV-_____ (RCL)** |
| **v.** | : | |
| | : | |
| **INTERNAL REVENUE SERVICE,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**COMPLAINT**

Plaintiff, *pro se*, alleges as follows:

**Nature of Action**

1.      This is an action under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA"), as amended, to secure access to requested agency records improperly withheld from Plaintiff by the Internal Revenue Service ("IRS") and to obtain all other appropriate and available relief.

**Jurisdiction and Venue**

2.      This Court has jurisdiction over this action by virtue of 28 U.S.C.  § 1331 because this is a civil action arising under the laws of the United States.  Specifically, this action is brought under 5 U.S.C. § 552(a)(4)(B).

3.      Venue is proper here under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELI GOTTESDIENER**, | : |
| | : |
| **498 7th Street** | : |
| **Brooklyn, NY  11215** | : |
| **Plaintiff,** | : |
| | : **08-CV-00618 (RCL)** |
| **v.** | : |
| | : |
| **INTERNAL REVENUE SERVICE,** | : |
| | : |
| **Defendant.** | : |
| | : |

## DECLARATION OF ELI GOTTESDIENER

I, Eli Gottesdiener, declare under penalty of perjury pursuant to 18 U.S.C. § 1746:

1.      I am a member of the Bar of this Court and plaintiff *pro se* in this action under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA"), as amended, brought to secure access to requested agency records improperly withheld from me by the Internal Revenue Service ("IRS") and to obtain all other appropriate and available relief.

2.      Contrary to what is stated in Plaintiff's May 7 letter to the Clerk, *see* Conover Decl., Ex. 1 ("Please note, <u>as stated on the Civil Cover sheet</u>, that this action is related *to Gottesdiener v. IRS*, 08-CV-618 (RCL)") (emphasis added), although I intended to do so, I inadvertently failed to answer "yes" on the civil cover sheet in response to the question whether the second suit I filed against the IRS (referred to as *Gottesdiener II*) is related to another pending action.

3.      Subsequent to May 7, 2008, I delayed making service on the IRS in *Gottesdiener II* because the IRS provided indications that it might respond fully and promptly to the requests I made that are the subject of *Gottesdiener II* without the need for an enforcement action.

4.      No one at IRS has ever told me that I am not entitled to the documents I seek in this case and even with respect to the requests at issue in *Gottesdiener II* the one IRS employee who briefly believed some of what I have requested in that case need not be made public explicitly withdrew that contention upon researching the matter and has since fully agreed with me on that score.

_/s/ Eli Gottesdiener_

2