**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **ELI GOTTESDIENER**, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **08-CV-00618 (RCL)** |
| **v.** | : | |
| | : | |
| **INTERNAL REVENUE SERVICE,** | : | |
| | : | |
| **Defendant.** | : | |

**PLAINTIFF'S OPPOSITION TO IRS'S MOTION TO DISMISS,
AND STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT**

**Introduction**

The government's motion to dismiss this FOIA action under Fed. R. Civ. P. 12(b)(1) for

lack of subject matter jurisdiction due to Plaintiff's alleged failure to exhaust his administrative

remedies is meritless, both legally and factually.

Legally, the government misstates the governing standards. First, in arguing that, due to

Plaintiff's alleged failure to exhaust the IRS's administrative review process, "[t]he Court . . .

lacks subject matter jurisdiction to entertain the complaint, and must dismiss" this case under

Fed. R. Civ. P. 12(b)(1), Def. Mem. at 7, the government fails to disclose controlling legal

authority dispositive of, and directly adverse to, the government's position – namely, *Hidalgo v.

F.B.I.*, 344 F.3d 1256 (D.C. 2003). Second, in arguing that under *Oglesby v. United States Dep't

of Army,* 920 F.2d 57 (D.C. Cir. 1990), essentially <u>any</u> agency response provided to a requester

prior to the date suit is filed is sufficient to require a FOIA requester to actually exhaust

administrative remedies before seeking judicial review, *see* Def. Mem. at 5-7, the government

urges an interpretation of *Oglesby* that no court anywhere has ever approved.  For good reason: it would allow the government to negate the constructive exhaustion provision of 5 U.S.C. § 552(a)(6)(C) through the simple expedient of issuing timely "we are working on it" letters, which is all the IRS ever sent Plaintiff in this case before he filed suit on April 9, 2008.  *See* Compl. ¶¶ 15, 19, 29, 33, 35, 45, 52 (detailing seven such letters).  *Oglesby* and more recent decisions clearly establish that the government's pre-suit response must be <u>substantive</u> and compliant in all respects with 5 U.S.C. § 552(a)(6)(A) (except for being late) before a requester who has already been deemed to have exhausted will be required to actually exhaust as well.

The facts, well-pled in the Complaint, show that the government has failed to <u>ever</u> substantively respond to Plaintiff's January 18, 2007 FOIA request, let alone substantively respond prior to the date suit was filed on April 9, 2008, and that, despite its representations to Plaintiff to the contrary, the government has to this day never begun processing Plaintiff's request.  *See* Compl. ¶¶ 14-54.  Indeed, after suit was filed, the government, by letter dated May 16, 2008, simply "closed" Plaintiff's FOIA request, without making any of the determinations required by § 552(a)(6)(A).  *See* Ltr. dated May 16, 2008, attached as Ex. 1 to Plaintiff's motion for entry of default (Doc. 5), filed June 11, 2008 (attached hereto as Ex. 1 for the Court's convenience).

Having no legitimate explanation it can offer the Court for its one-and-a-half year (and counting) failure to even begin processing Plaintiff's January 18, 2007 FOIA request, the government confuses that request – the sole request at issue in this case – with a totally separate March 7, 2008 FOIA request for very different documents that is the subject of a separate lawsuit, namely, *Gottesdiener v. Internal Revenue Service,* 08-CV-799 (RJL) ("*Gottesdiener*

*II"*).  The government further confuse Plaintiff's January 18, 2007 FOIA with three <u>non-FOIA</u> requests Plaintiff made in early 2008, directly under Internal Revenue Code ("Code") § 6104(a), forwarded to the IRS's Tax Exempt/Government Entities unit ("TEGE") – requests that are also completely different than Plaintiff's January 18, 2007 FOIA request.

The government neglects to inform the Court that Plaintiff <u>tried</u> to exhaust the administrative remedies available to him in September 2007, but the government, recognizing that it had not yet made any determination under § 552(a)(6)(A), rejected his attempted to do so, informing Plaintiff that <u>his only remedy was to file this lawsuit</u>.  *See* Compl. ¶ 34.  (Even then, Plaintiff, in a good faith effort to avoid litigation, spent additional months attempting to get the IRS to simply begin processing his request.  *Id.* ¶¶ 35-54.  It never did.  *Id.*  Clearly, the government's motion lacks merit and should be denied.

### Statement of Facts

1.      The FOIA that is at issue here is Plaintiff's January 18, 2007 FOIA and none other.  *See* Compl. ¶ 14.  That FOIA seeks a copy of the "plan document" of cash balance pension plans <u>the identities of which are unknown to Plaintiff yet have been specifically identified by the IRS</u>, in a specialized review process begun in early 2007 and intended to be completed by now, <u>as violating the lump sum calculation rules of IRS Notice 96-8</u>.  *Id.*; *see also id.* ¶¶ 6-13 ("Background to Plaintiff's FOIA").

2.      A totally separate FOIA, the subject of *Gottesdiener II,* dated March 7, 2008 (that is, more than a year after Plaintiff's submitted his January 18, 2007 FOIA request) seeks a broader range of documents but concerning a very limited universe of plans – namely, all documents relating to <u>22 specifically named cash balance plans whose identities *are* known to</u>

Plaintiff and that have or may have Notice 96-8 or related problems.  *See Gottesdiener II* Compl.

¶ 15.[1]

  3.  Before making the March 7, 2008 FOIA request that is the subject of *Gottesdiener*

*II,* Plaintiff utilized the <u>non-FOIA</u> mechanism open to any member of the public interested in

reviewing documents relating to an employee benefit plan's request for a determination letter

that it is tax-qualified, *see* Code § 6104(a); *see also* 26 C.F.R. ("Treas. Reg.") § 301.6104(a)-1 *et*

*seq*., and IRS Manual 11.3.10.  *See Gottesdiener II* Compl. ¶¶ 7, 12 & n.3 (discussing § 6104

requests made on January 31, 2008, March 4, 2008 and April 28, 2008).  *See generally Tax*

*Analysts v. IRS,* 350 F.3d 100 (D.C. Cir. 2003) (non-FOIA case brought under Code § 6104

ordering IRS to disclose redacted determinations denying or revoking tax exemptions).  These

requests were directed not to the IRS FOIA office but rather the IRS's Tax Exempt/Government

Entities unit ("TEGE").  *Id.* ¶¶ 7, 12 & n.3.[2]

---

[1] On August 15, the government filed an opposition to Plaintiff's motion to have *Gottesdiener II*
transferred to this Court's docket as a related case under Local Rule 40.5.  *See* Gov't Opp. (Doc. 6,
*Gottesdiener II,* filed August 15, 2008.  The sole stated basis for the government's opposition is that
Plaintiff has declined to withdraw his opposition to the government's motion to vacate the default entered
in this case as the government has requested.  *Id.*; Pl. Reply, Doc. 7, *Gottesdiener II,* August 15, 2008.  As
of the filing of this opposition, that motion is still pending before Judge Leon.

[2] Judging from its motion, the government appears to be unaware that the IRS's obligations to make
disclosure under Code § 6104 of employee benefit plan documents upon written request is completely
independent of its obligations under the FOIA.  *See* 26 U.S.C. § 6104(a)(1)(B)(i), (iii)-(iv) (documents
that must be made available to the public for inspection upon written request include "any application
filed with respect to the qualification of a pension, profit-sharing, or stock bonus plan under section
401(a)"; "any papers submitted in support of [such] application";  "any letter or other document issued by
the Internal Revenue Service and dealing with the qualification [of the plan]"); Treas. Reg. §
301.6104(a)–3(c) (documents that must be made available include but are not limited to "[d]etermination
letters relating to the qualification of a plan, "[t]echnical advice memoranda . . .relating o the issuance of
such determination letters," "[t]echnical advice memoranda relating to the continuing qualification of a
plan . . . previously determined to be qualified, or to the qualification of a plan . . . for which no
determination letter has been issued," "[l]etters or documents revoking or modifying any prior favorable
determination letter or denying the qualification of a plan . . . for which no determination letter has been

4.      Contrary to the government's assertion, *see* Def. Mem. at 2 & n.2, Plaintiff has
<u>never</u> submitted a "FOIA request" to TEGE.  All requests were made exclusively pursuant to
Code § 6104(a); Treas. Reg. § 301.6104(a)-1 and IRS Manual 11.3.10 and never once invoke the
FOIA.  *Compare* Def. Mem. at 2 & n.2 (incorrectly discussing Plaintiff's § 6104 requests to
TEGE as "FOIA request[s]" without any reference to Code § 6104) *with Gottesdiener II* Compl.
¶¶ 7, 12 & n.3 (describing Plaintiff's TEGE requests).

5.      When Plaintiff learned that TEGE would not or might not release all the
documents he requested regarding the 22 specifically-named plans, he submitted the March 7,
2008 FOIA request to the IRS FOIA office.  *See Gottesdiener II* Compl. ¶¶ 13-15.  The March 7,
2008 FOIA parallels the § 6104 requests made of the TEGE.  *Id.*[3]

6.      While TEGE has provided many of the documents Plaintiff sought by way of his
non-FOIA requests, many others have yet to be provided and it is far from clear when or whether
they will be.  *See Gottesdiener II* Compl. ¶ 20-22.   The IRS FOIA office has acknowledged
receipt of Plaintiff's March 7, 2008 FOIA but has yet to respond to it.  *Id.* at ¶ 19.[4]

7.      The government asserts that "[b]y letter dated January 31, 2008, plaintiff
amended his original request and agreed to limit his request to 9 named plans."  Def. Mem. at 2.

issued"); IRS Manual 11.3.10 "Employee Plans Information" at Section 11.3.10.1 (dated 06-17-2005)
("Authority for Public Inspection") (same).

[3] In making this parallel FOIA request, Plaintiff made clear that he did not wish to duplicate anyone's
work and so offered to forward a list of documents within the scope of the request which Plaintiff already
possessed.  *Gottesdiener II* ¶ 16.  Plaintiff forwarded that list, to both the FOIA Office and TEGE (in
connection with his non-FOIA requests), by letter dated May 2, 2008.  *Id.*

[4] This has not prevented the government from moving to dismiss Plaintiff's complaint in that case under
Rule 12(b)(1) for failure to actually exhaust administrative remedies, using the same confused statement
of facts and legal arguments made here.  *See* Doc. 6, *Gottesdiener II.*

That is not true.  As Complaint ¶ 47 explains, via Plaintiff's January 31st letter, he merely

offered, in the hope of getting some meaningful disclosure from the government after getting no

action on a FOIA filed a year earlier, <u>to "hold [his January 18, 2007] request **in abeyance**</u> in

exchange for prompt disclosure of responsive records as to nine (9) specific cash balance plans

[Plaintiff believed to be plans within the scope of his January 18, 2007 FOIA]").  Compl. ¶ 47

(emphasis added).  Not only is it untrue that Plaintiff ever "amended" his FOIA, but as the

remainder of the Complaint makes clear, the IRS FOIA Office never took Plaintiff up on his

offer to temporarily hold it in abeyance in exchange for the referenced documents.  Indeed, it

was precisely because Plaintiff did not receive all of the referenced documents via the non-FOIA

requests he subsequently made to TEGE that Plaintiff filed the second FOIA request (the March

7, 2008 FOIA), for documents regarding certain specifically-identified plans that have or may

have Notice 96-8 problems.  <u>All of this is the subject of *Gottesdiener II*, not *Gottesdiener I*</u>.

     8.    Contrary to the government's implicit assertion, the list of cash balance plans the

government discusses on page 1 of its brief is <u>not</u> anything Plaintiff ever asked for in his  January

18, 2007 FOIA request (or his March 7, 2008 FOIA request or his non-FOIA requests to TEGE).

*See* Complaint ¶¶ 22-23.  The list referenced is, instead, simply a <u>partial</u> list of <u>all</u> cash balance

plans generated many years ago for an unrelated purpose and without regard to whether or not

they even offer a lump sum option let alone with regard to whether they comply with lump sum

rules.  *Id.*[5]  When in the course of attempting to get a substantive response to his January 18,

2007 request Plaintiff learned of the existence of the list, he requested a copy of it and the plan

---

[5] The government calls them "cash <u>benefit</u>" plans, Def. Mem. at 1 (emphasis added) but this is mistaken –
no one working in this area refers to these plans in that way.  They are "cash balance" plans or "hybrid"
plans.

documents for two plans in which Plaintiff had an interest.  The list otherwise has nothing to do with this case (or *Gottesdiener II*).  The government's suggestion, at the bottom of page 2 of its brief and elsewhere in its submission, that the plan documents responsive to this list are not just within the scope of what Plaintiff seeks via his January 18, 2007 request but that they are all that he seeks, is simply incorrect.

9.      As noted above, Plaintiff attempted to file an appeal from the *de facto* denial of Plaintiff's January 18, 2007 request by letter dated September 27, 2007.  Compl. ¶ 34; Ltr. dated Sept. 27, 2007, attached hereto as Ex. 2.  In response to this attempted appeal, the government told Plaintiff, in a letter dated October 24, 2007, that his sole remedy was to file suit because the government's failure to timely respond to his request could not be appealed administratively. *See* Compl. ¶ 34; Ltr. Dated Oct. 24, 2007, Ex. 3.

10.     Further confirming that the government did not provide Plaintiff with a substantive response to his January 18, 2007 FOIA prior to April 9, 2008 (the date Plaintiff filed suit), the IRS continued to ask Plaintiff for additional time to provide him with such a response after April 9, 2008.  Specifically, by letter dated May 7, 2008, referring to its prior March 21, 2008 letter requesting more time to obtain the records Plaintiff requested on January 18, 2007, *see* Compl. ¶ 52 (discussing IRS's March 21, 2008 letter), the IRS represented that "[we are] still working on your request and need additional time to August 15, 2008."  *See* Ex. 4.

11.     Notwithstanding this May 7, 2008 letter, approximately one week later stating that it was still working on Plaintiff's request and would need until August 15 to provide Plaintiff with a substantive response, a week later, by letter dated May 16, 2008, the FOIA Office informed Plaintiff that "we are closing your FOIA request."  The sole explanation given was:

7

"[y]ou are requesting documents that relate to cash balance pension plans.  The TEGE Customer Accounts Service in Cincinnati has primary jurisdiction over the plans you requested and will provide you the requested plans."  Ex. 1.

12.     This "explanation," like the government's motion, confuses Plaintiff's January 18, 2007 FOIA request for the "plan document" of all plans whose identities are unknown to Plaintiff but which have been determined by the IRS to violate Notice 96-8, and Plaintiff's non-FOIA requests to TEGE for all documents relating to 22 specifically-identified plans that may be or are in violation of Notice 96-8.

13.     Even had the May 16, 2008 "we are closing your FOIA request" letter arrived before Plaintiff filed suit in April 2008, it still would not have required him to exhaust administrative remedies because the letter did not provide a substantive determination within the meaning of *Oglesby* and § 552(a)(6)(A).  In addition to failing to ever provide Plaintiff, before or after April 2008, with a substantive response to his January 18, 2007 FOIA request, the government has not provided Plaintiff with a single document responsive to that request – except to the extent it has, in response to Plaintiff's non-FOIA requests, provided Plaintiff with a copy of the plan document of one or more of the 22 plans that, a year later, Plaintiff identified for the IRS as having Notice 96-8 problems.  *See* Compl. ¶¶ 14-54.

* * *

In sum, Plaintiff is thus no closer today to obtaining the documents, which the government agrees he is entitled by law to receive, than he was when he made his request on January 18, 2007.  Meanwhile, the statute of limitations clock continues to tick on the rights of plan participants who, the IRS itself believes, may have received legally insufficient lump sums,

while Plaintiff is forced to spend valuable time responding to a patently frivolous motion. *See, e.g., Virginia Transformer Corp. v. Dept of Energy*, 628 F.Supp. 944, 947 (W.D.Va. 1986) ("it strikes the court as silly that defendants argue the inconsistent position that [plaintiff] should have exhausted an administrative remedy before coming to this court. [Plaintiff] had no decision from which it could appeal").[6]

## Discussion

I.    **Dismissal for failure to exhaust under the FOIA is discretionary, not mandatory, and would be under Rule 12(b)(6), not Rule 12(b)(1).**

In arguing that, due to Plaintiff's alleged failure to exhaust the IRS's administrative review process, "[t]he Court . . . lacks subject matter jurisdiction to entertain the complaint, and must dismiss" this case under Fed. R. Civ. P. 12(b)(1), Def. Mem. at 7, the government fails to disclose controlling legal authority dispositive of, and directly adverse to, the government's position – namely, *Hidalgo v. F.B.I.*, 344 F.3d 1256 (D.C. 2003).[7]

In *Hidalgo*, the D.C. Circuit squarely held that in FOIA cases the exhaustion requirement "is <u>not</u> jurisdictional because the FOIA does not unequivocally make it so." *Id.* at 1259 (emphasis added). *Accord Wilbur v. Central Intelligence Agency*, 355 F.3d 675, 678

---

[6] The fact that the government has filed such motion, in light of its default and its frivolously-argued motion to vacate that default, only seems to confirm that the government's further participation in this case is unlikely to materially aid the Court in its determination of any motion for default judgment Plaintiff might be permitted to file under Rule 55(e). *See* Fed. R. Civ. P. 55(e) ("a default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court").

[7] In support of its argument that exhaustion is a jurisdictional prerequisite, the government cites (among other inapposite authorities) a 2005 decision from the Eastern District of New York. *See* Def. Mem. at 4. It is hard to understand how the government could have been unaware of the existence of *Hidalgo*, decided in 2003, when it filed the instant motion.

n.*(D.C.Cir. 2004) (affirming district court's decision to excuse requester's failure to timely exhaust noting that "[w]ere the exhaustion requirement jurisdictional, this failure would bar judicial review of the merits").  Where, as here, no statutory provision bars judicial review such as here, "courts usually look at the purposes of exhaustion and the particular administrative scheme in deciding whether they will hear a case or return it to the agency for further processing."  *Oglesby v. United States Dep't of Army,* 920 F.2d 57, 61 (D.C. Cir. 1990); s*ee McCarthy v. Madigan*, 503 U.S. 140 (1992), *superseded on other grounds*, 42 U.S.C. § 1997(e) ("Where Congress specifically mandates, exhaustion is required.  But where Congress has not clearly required exhaustion, sound judicial discretion governs") (citations omitted).

Thus, contrary to the government's argument, failure to exhaust is <u>not</u> grounds for dismissal under Rule 12(b)(1) – it may only be asserted by the government under Rule 12(b)(6) (which the defense does not invoke except in a typographical error, *see* Def. Mtn. at 1).  *See Hidalgo,* 344 F.3d at 1260; *Clemmons v. U.S. Dept. of Justice,* Civ. No. 06-00305 (RCL), 2007 1020796, *5 (D.D.C. Mar. 30, 2007) (under *Hidalgo,* claim that plaintiff failed to exhaust must be made under Rule 12(b)(6)).  Also contrary to the government's representations to the Court, dismissal for failure to exhaust is discretionary with the Court, and not mandatory.  *See Wilbur, supra*; *Wiggins v. National Credit Union Adm.,*Civ. No. 05-2332 (RCL), 2007 WL 259941, *5 (D.D.C. Jan 30, 2007) (under *Hildago,* reaching merits despite plaintiff's failure to exhaust where the purposes of exhaustion were not served by delaying a determination on the merits).

**II.     Once a Requester Has Constructively Exhausted His Administrative Remedies, He Can Only Be Required to Actually Exhaust if the Agency Has Provided Him with a Substantive, FOIA-Compliant Determination Before He Has Filed Suit.**

The law is clear that if an agency in receipt of a FOIA request fails to make the required determination and comply with the statute's notification requirements within the 20-day time limit, the person making the request "shall be deemed to have exhausted his administrative remedies." 5 U.S.C. § 552(a)(6)(C).  Equally clear, under *Oglesby,* is that if the agency provides the requester with a substantive response before the requester has filed suit and has otherwise complied with the terms of this provision, the exhaustion requirement still applies.  *Oglesby*, 920 F.2d at 64-65.  The government's suggestion that essentially <u>any</u> agency response to a request following constructive exhaustion but prior to the date suit is filed is sufficient to reinstate the exhaustion requirement and require the requester to actually exhaust before seeking judicial review is incorrect.  *See* Def. Mem. at 5-7.  Indeed, *Oglesby* itself made clear that the government's response must be substantive and compliant in all respects with 5 U.S.C. § 552(a)(6)(A) (except for being late) before a requester who has already constructively exhausted administrative remedies will be required to actually exhaust as well.

In *Oglesby*, the D.C. Circuit held that the plaintiff in that case could not be required to actually exhaust one of his requests, made to the State Department, because that agency's first response to his request was only that it would process his request and its second response that it no documents responsive to his request had been found (an adverse determination under 5 U.S.C. § 552(a)(6)(A)(i)), was not accompanied by a notification of appeal rights.  *Oglesby*, 920 F.2d at 67.  Therefore, the court concluded that the requester did not have to actually exhaust his remedies before filing suit.  *Id.*  ("[the agency's] response was insufficient under the FOIA to

11

trigger the exhaustion requirement and [so] appellant was free to file suit under 5 U.S.C. § 552(a)(6)(C)").  More recently, in *Judicial Watch v. Rossotti,* 326 F.3d 1309 (D.C. Cir.2003), a fee waiver case in which the agency's sole response within 20 days to the fee waiver request was to ask requester for more information, the D.C. Circuit noted that it was undisputed that if the requester sufficiently supported its original request, "then it constructively exhausted its administrative remedies because Treasury did not respond <u>substantively</u> within twenty days." 326 F.3d at 1312 (emphasis added).

Numerous other cases similarly hold that only a substantive determination will trigger the *Oglesby*'s actual exhaustion requirement.  *E.g., Bansal v. Drug Enforcement Admin.,* Civ. No. 06-3946, 2007 WL 551515, *6 (E.D.Pa., Feb. 16, 2007) (exhaustion not required where plaintiff received only a "vaguely positive response in response to his request for documents notifying him that his request was on a list of documents awaiting processing"); *Murillo v. U.S. Dept. of Homeland Sec.*, No. 3:06-CV-1725-BF, 2007 WL 1944406, *4 (N.D.Tex. Jun 28, 2007) (letter that "merely informs Plaintiff that the responsive records are not under the purview of CBP and that Plaintiff's request has been forwarded to CIS" insufficient to require administrative appeal because it "does not, as Plaintiff points out, make a determination regarding the release of the requested records nor informs Plaintiff of the right to appeal the action taken"); *Anderson v. U.S. Postal Service*, 7 F.Supp.2d 583, 586 (E.D.Pa.1998) ("vague positive response" did not require plaintiff to exhaust, *citing Oglesby*, 920 F.2d at 65).  *See also Grove v. C.I.A.*, 752 F.Supp. 28, 31 (D.D.C. 1990) ("most of the defendant agencies neither complied with the ten working day requirement nor responded before January 12, 1989, the date on which plaintiff filed suit. As to

these agencies, plaintiff is deemed to have exhausted his administrative remedies, and defendants' argument fails").

The cases cited by the government are inapposite because, to the extent not pure *dictum*, in each of the cases cited, the agency had provided the requester with a "determination" sufficient to satisfy the requirements of § 552(a)(6)(A), and therefore the constructive exhaustion provision of § 552(a)(6)(C) no longer applied and actual exhaustion was required. No case the government cites finds *Oglesby*'s actual exhaustion requirement triggered based on less than a § 552(a)(6)(A)-compliant response. As noted, were the rule otherwise, through the mere expedient of timely issuing "we are working on it" letters (such as the IRS issued Plaintiff for more than a year, *see* Compl. ¶¶ 15, 19, 29, 33, 35, 45, 52), the government could render the statute's constructive exhaustion provision a dead letter.

**III.    The Government Cannot Establish it Provided Plaintiff with an *Oglesby*-Complaint Response Prior to April 9, 2008 Nor That This is a Case Where the Purposes of Exhaustion Would Be Served By Requiring Exhaustion.**

The facts show that the government did not provide Plaintiff with any substantive response to his January 18, 2007 FOIA request prior to April 9, 2008. Indeed, even had it pre-dated the filing of the Complaint, the IRS's May 16, 2008 letter, informing Plaintiff that the IRS had decided to close his January 18, 2007 FOIA because he had made certain very different non-FOIA requests of TEGE, would not constitute a sufficient determination to require further administrative appeal because it did not inform him of his appeal rights. *Oglesby,* 920 F.2d at 67.

13

The facts as alleged and as effectively undisputed establish that <u>to this day</u> the government has failed to substantively respond to Plaintiff's request and that the government <u>never</u> began processing Plaintiff's request, contrary to what it repeatedly represented to him.

This is a case where the Court should exercise its discretion to excuse any arguable exhaustion requirement because, as the government's October 24, 2007 response to Plaintiff's attempted appeal shows, exhaustion would not only be futile, it is literally not an option here.

In *McCarthy v. Madigan, supra*, the Supreme Court explained, in holding that the exhaustion of the Bureau of Prisons' administrative procedures was not required because plaintiff sought only money damages which the Bureau could not provide, that "[i]n determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion. . . . Application of this balancing principle is 'intensely *practical.*"' *McCarthy,* 503 U.S. at 146 (citations omitted; emphasis added).  Here, by the government's own admission, an administrative appeal is not even available to Plaintiff.  No purpose can be served by requiring exhaustion in such circumstance.

14

## Conclusion

Wherefore, for the reasons stated herein and for such reasons as may appear to the Court, Plaintiff respectfully submits the instant motion be denied.

Respectfully submitted

 /s/ *Eli Gottesdiener*
Eli Gottesdiener (D.C. Bar No. 420764)
GOTTESDIENER LAW FIRM, PLLC
1025 Connecticut Avenue, N.W., Suite 1000
Washington, D.C. 20036
Email: eli@gottesdienerlaw.com
Telephone: (202) 243-1000
Facsimile: (202) 243-1001

15



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

SMALL BUSINESS/SELF-EMPLOYED DIVISION

May 16, 2008

Mr. Eli Gottesdiener
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, NY  11215

Dear Mr. Gottesdiener:

This responds to your Freedom of Information Act (FOIA) request of January 18, 2007 received in our office on January 23, 2007.   We also received additional letters from you dated January 31, 2008, March 7, 2008, and May 2, 2008 that relate to your original request.

You are requesting documents that relate to cash balance pension plans.  The TEGE Customer Accounts Service in Cincinnati has primary jurisdiction over the plans you requested and will provide you the requested plans.  Therefore, we are closing your FOIA request in the HQ Headquarters Office (FOIA).   If you need more information, you may write to:

> Internal Revenue Service
> Attn:  Jennifer Frederick
> Manager, EP Group 7525
> P O. Box 2508
> Room 4010
> Cincinnati, OH  45201

We are returning your check in the amount of $500.00 (Check No. 478) dated January 31, 2008.

If you have any questions please call Sr. Disclosure Specialist Sharon E. Baker, ID # 50-00267, at (202) 283-0308 or write to: Internal Revenue Service, HQ Disclosure Office (FOIA), NCFB-C2-332, 5000 Ellin Road, Lanham, MD  20706.  Please refer to case number 03-2007-00302.

Sincerely,

*Marie A. Twarog for*

Janet R. Miner
Chief, Disclosure



**Gottesdiener**
**Law Firm, PLLC**

New York | Washington, D.C.
www.gottesdienerlaw.com

498 7th Street
Brooklyn, NY 11215
Tel: 718.788.1500
Fax: 718.788.1650

**Eli Gottesdiener**
eli@gottesdienerlaw.com

September 27, 2007

Gregory G. Turner
Acting Disclosure Manager
Baltimore Disclosure Office
Internal Revenue Service
SE:S:CLD:GLD:D3, George Fallon Federal Building
Room 940, 9th Floor, 31 Hopkins Plaza
Baltimore, MD 21201

      Re:    Appeal: FOIA 03-2007-00302 (January 18, 2007 "Whipsaw" FOIA request)

Dear Mr. Turner:

      I wish to formally appeal the denial of material responsive to the above-referenced request. Please forward this appeal to the appropriate authorities and inform me immediately if I need to do anything further in order to perfect my appeal.

      The appeal is necessitated by the fact that the Service has failed to handle this request in an appropriate manner and has given me no reason to think that it will do so anytime soon without me escalating the matter, if necessary to federal court.

      I have repeatedly attempted, through letters, phone calls and emails, to get the Service to process the request appropriately. First the request was misdirected. This was followed by extended delays with no seeming comprehension of what the request really sought, despite my repeated attempts to explain. Then over a period of months I had ultimately fruitless exchanges with Ms. Baker Ms. Prestia and Ms. McClean about how the Service intended to handle the request: everyone told me someone else has responsibility for handling it, coordination is needed, we'll get back to you, and so on. No one ever has.

      For example, I was specifically promised by Ms. McClean in June that a clear communication would be sent to agents in the field reviewing these plans that any such plans with IRS Notice 96-8 "whipsaw" problems need to be flagged and copies forwarded for disclosure or possible disclosure to me, and that I would be consulted as to the wording of that communication, at least to make sure that it accurately captured the substance of my request. That never happened.

      The result isn't just bad for me, it's bad for the Service. As I have explained to all concerned more than once, plans are being reviewed everyday and the fact that no one reviewing those plans is apparently aware of my request means enormous unnecessary disruption will be

IRS                                                          Gottesdiener Law Firm, PLLC
Gregory G. Turner
September 27, 2007
Page 2

caused once the request is finally (and effectively) communicated to the field since agents will
then have to go back over work they've already performed, and dig out cases previously handled
and filed away. It's just common sense that if they have the request in mind at the time they are
reviewing the plans, compliance will be many times more efficient and accurate than what's
going to happen if the current state of affairs persists.

Over a month ago I requested a conference call with Ms. McClean, Ms. Baker and Ms.
Prestia on the line all at once so we can work together to get this request moving without
involving the federal courts. I received no response to this request. I reiterated that request in
my call with you earlier this month and do so again now.

The record shows I've been patient. At some point my patience will run out and the
matter will have to be resolved in court. That won't be the right result for anyone. Please help
me get my request handled in an appropriate fashion.

Sincerely,

Eli Gottesdiener

**Internal Revenue Service**

**Department of The Treasury**

**Date:** OCT 2 4 2007

Eli Gottesdiener
498 7th Street
Brooklyn, NY 11215

**Address and reply to:**
Appeals Office, Fresno Campus
5045 E. Butler Ave. M/S 55201
Fresno, CA 93727-5136

**Contact Telephone Number:**
(559) 452-3053 (Office)
(559) 452-3266 (Fax)
**In Re:**
FOIA Appeal

Dear Mr. Gottesdiener:

This letter is in response to your September 27, 2007 Freedom of Information Act (FOIA) appeal of the failure of the Disclosure Office to respond in a timely manner to your request for a documents.

Under the Department of Treasury's revised FOIA regulations, at 31 C.F.R. Section 1.5(f), a lack of a timely response is not a valid reason for filing an administrative appeal. *See* 65 FEDERAL REGISTER 40503-40516 (June 30, 2000). These FOIA regulations apply to all bureaus of the Department of the Treasury, including the Internal Revenue Service. 31 C.F.R. Section 1.1(a)(1)(viii).

When a determination on your request is not made within the twenty working day deadline (5 U.S.C. Section 552(a)(6)(A)(i)), or within the ten working day extension permitted for certain circumstances (5 U.S.C. Section 552(a)(6)(B)(iii)), and you have not agreed to a different response time frame (5 U.S.C. Section 552(a)(6)(B)(ii)), the law permits you to file a lawsuit in the United States District Court in which you live or work, or where the records you are asking for are located, or in the District of Columbia, to obtain a response. 5 U.S.C. Section 552(a)(6)(C)(i). Therefore, there is no jurisdiction for an administrative appeal.

Because there is no basis for an administrative appeal under these circumstances, we are closing our file with regard to this matter.

Sincerely,

Donna DeWeese
Appeals Team Manager



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

SMALL BUSINESS/SELF-EMPLOYED DIVISION

May 7, 2008


*Mr.* Eli Gottesdiener
Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, NY  11215

In re:  Case Balance Plans

Dear Mr. Gottesdiener:

This is a follow-up response to your Freedom of Information Act (FOIA) request dated January 18, 2007.

On March 21, 2008 I asked for more time to obtain the records you requested.  I am still working on your request and need additional time to August 15, 2008.  I will contact you by August 11, 2008 if I am still unable to complete your request.

Once again, I apologize for any inconvenience this delay may cause.

If you have any questions please call Senior Disclosure Specialist Sharon E. Baker, ID # 50-00267, at (202) 283-0308 or write to: Internal Revenue Service, HQ Disclosure Office (FOIA), 5000 Ellin Road, NCFB-C2-332, Lanham, MD  20706.  Please refer to case number 03-2007-00302.

Sincerely,

Sharon Baker
Senior Disclosure Specialist
HQ Disclosure Office (FOIA)

**Internal Revenue Service**
**1111 Constitution Avenue, NW**
**Washington, DC 20224**

Official Business
Penalty for Private Use, $300

1121533613 C040





US OFFICIAL MAIL
$300 Penalty
For Private Use

**$00.41**
Mailed From 22312
05/07/2008
US POSTAGE

0161H26601324

Hasler